| | | |
|---|---|---|
| STATE OF CONNECTICUT | : | |
| | : | |
| | : | ss: New Haven, Connecticut |
| | : | |
| COUNTY OF NEW HAVEN | : | September 2, 2021 |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Anthony Crisera, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND OF AFFIANT**

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), where I have been employed since January of 2021. I am currently assigned to work a variety of criminal matters, including financial crimes such as securities fraud, bank fraud, wire fraud, mail fraud, and cyber-enabled fraud. During my training at the FBI Academy in Quantico, Virginia, I received instruction regarding a variety of investigative and legal matters, including the topics of Fourth Amendment searches and seizures, the drafting of search and seizure warrant affidavits, and the principles of probable cause. I am currently a Certified Public Accountant (CPA), and prior to my employment as a Special Agent of the FBI, I was employed as a Senior Audit Associate at PricewaterhouseCoopers in Charlotte, North Carolina for approximately two years. As a CPA, I have gained extensive experience in examining finance-related business processes, analyzing financial information, and evaluating business expenditures. Through my training and experience as a CPA, I have developed the appropriate level of financial acumen necessary to effectively conduct financial investigations. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

2. I make this affidavit in support of a criminal complaint and arrest warrant charging an adult female named Jamie Petrone-Codrington ("PETRONE-CODRINGTON"), who was born in 1979, with the following criminal offenses (collectively, the "TARGET OFFENSES"): mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. § 1957.

3. At the time of the offense conduct set forth below, PETRONE-CODRINGTON was living in Connecticut.

4. Based on the information set forth in this affidavit, I believe there is probable cause to believe, and I do believe, that PETRONE-CODRINGTON committed the TARGET OFFENSES in the District of Connecticut.

5. The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement; publicly available court records; interviews of witnesses, documents and other investigative materials which I have reviewed, as well my training and experience as a law enforcement officer. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested criminal complaint and arrest warrant.

## **RELEVANT STATUTES**

6. 18 U.S.C. § 1341 (mail fraud) prohibits a person who, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, causes any matter or thing to

be delivered by any private or commercial interstate carrier for the purpose of executing such scheme or artifice.

7. 18 U.S.C. § 1343 (wire fraud) prohibits a person who, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire communication, in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

8. 18 U.S.C. § 1957 (money laundering) prohibits a person from (acting in the United States) knowingly engaging in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

## THE INVESTIGATION AND PROBABLE CAUSE

9. On or about August 25, 2021, the FBI initiated an investigation into PETRONE-CODRINGTON regarding an apparent scheme to defraud Yale University and the Yale University School of Medicine ("Yale Med"), by causing Yale Med, and in particular the Yale Med Department of Emergency Medicine, to purchase electronic devices from one or more vendors, and then selling those devices to a third party for her own financial gain. The FBI initiated the investigation based on information provided by Yale.  As part of its investigation, the FBI has reviewed certain Yale records, including email communications to and from PETRONE-CODRINGTON.

10. PETRONE-CODRINGTON was employed by Yale Med, Department of Emergency Medicine, beginning in approximately 2008, and had previously worked in other areas of Yale Med and Yale New Haven Hospital since 1999.  Since September 1, 2019,

3

PETRONE-CODRINGTON was Lead Administrator and Director of Finance and Administration for the Department of Emergency Medicine; prior to that, PETRONE-CODRINGTON held other administrative positions within the Department of Emergency Medicine beginning in 2008.  As part of her job responsibilities, PETRONE-CODRINGTON had authority to make and authorize certain purchases on behalf of the Department of Emergency Medicine for departmental needs.  So long as the purchase amount stayed below $10,000, PETRONE-CODRINGTON did not need further authorization within the Yale purchasing structure.

11. Beginning at least as early as 2013, PETRONE-CODRINGTON engaged in a scheme whereby she ordered, or caused others working for her to order, large amounts of computer hardware—most recently tablet computers such as Microsoft Surface Pros—from Yale vendors using Yale Med funds.  PETRONE-CODRINGTON broke up purchases into several orders below the $10,000 threshold that would require additional approval.  PETRONE-CODRINGTON often falsely represented on Yale internal forms and in electronic communications that the hardware was for specified Yale Med needs, such as particular medical studies.  However, when Yale Med received the hardware from vendors, PETRONE-CODRINGTON instead arranged to ship the hardware, via FedEx or other interstate carrier, to an out-of-state business in exchange for money.  That business would then resell the hardware to other end customers.  PETRONE-CODRINGTON directed that payment be made from the out-of-state business into a company of which PETRONE-CODRINGTON is a principal.  PETRONE-CODRINGTON then used that money to purchase expensive goods and services, among other things, often in excess of $10,000.

12. Records reviewed thus far show that, since fiscal year 2018, PETRONE-CODRINGTON drafted thousands of purchase orders, typically below $10,000, totaling approximately $30 million. Since January 2021, PETRONE-CODRINGTON arranged for Yale's purchase of approximately eight-thousand iPads and Surface Pro tablets. From approximately May 27, 2021 to August 19, 2021, PETRONE-CODRINGTON ordered approximately $2.1 million in computer equipment on behalf of Yale. Law enforcement is currently evaluating how much of those totals were fraudulent, as opposed to legitimate purchases.

13. By way of example, Yale records show that on May 26, 2021, PETRONE-CODRINGTON directed another Yale employee to prepare documentation for an order of 100 Microsoft Surface Pro 7 CORE i5 8 GB/256 GB tablet computers, which PETRONE-CODRINGTON claimed were for a new study to be launched on Memorial Day weekend. Accordingly, the Yale employee prepared 12 purchase orders for 8 Surface Pros each (totaling $9,102.56 per order) and one purchase order for 4 Surface Pros (totaling $4,551.28). On May 27, 2021, the out-of-state business sent an email to PETRONE-CODRINGTON (in Connecticut) with the subject line "Label 5/27/2021," and the text "Contents: 100 X SP 7 512 GB i7." The email attached a .pdf file with 10 FedEx labels, addressed to a New York location. The labels each contained unique tracking numbers. FedEx records show that packages with those tracking numbers were shipped from Orange, Connecticut, on June 3, 2021 and delivered on June 4, 2021 to a location in New York associated with the out-of-state business.

14. I have reviewed bank records associated with PETRONE-CODRINGTON's business, which shows an incoming wire from the out-of-state business on May 27, 2021 (the date of the above example) in the amount of $71,800.00.

15. Records show that, as recently as August 24, 2021, PETRONE-CODRINGTON placed an order from a Yale vendor for approximately $144,000 in Surface Pro tablets, broken into several purchase orders under $10,000.

16. The FBI has recently intercepted packages sent by PETRONE-CODRINGTON from Connecticut to the out-of-state business:

   a. On August 26, 2021, this Court authorized a search warrant for seven boxes containing packages that had been delivered by PETRONE-CODRINGTON to a FedEx location in Orange, Connecticut on August 25, 2021, for shipment to a New York address associated with the out-of-state business. Video surveillance showed PETRONE-CODRINGTON delivering the boxes to FedEx. Those boxes indeed contained numerous individually boxed new Surface Pro tablet computers.

   b. On August 26, 2021, law enforcement observed PETRONE-CODRINGTON drive numerous boxes that had been loaded into the back of her Range Rover SUV from her Yale Med office to the FedEx location in Orange, again to be shipped to New York. The FBI seized from FedEx 94 individually boxed Surface Pro tablet computers that had been delivered by PETRONE-CODRINGTON.

17. The precise beginning date of the scheme and artifice has not yet been determined. Law enforcement has located an email as early as 2013 showing PETRONE-CODRINGTON arranging the sale of an Apple MacBook computer.

18.     PETRONE-CODRINGTON provided a voluntary statement to law enforcement on or about August 26, 2021. Among other things, PETRONE-CODRINGTON admitted to having devised and executed the above-referenced scheme, and indicated that it had been going on for several years, possibly as many as ten years. PETRONE-CODRINGTON estimated that approximately 90% of her computer-related purchases were fraudulent.

## CONCLUSION

19.     Based on the foregoing, there is probable cause to believe that PETRONE-CODRINGTON committed the TARGET OFFENSES, at least as early as 2013 and continuing through August 26, 2021, by defrauding Yale University and Yale Med through reselling electronics that she ordered with Yale funds; using FedEx and other commercial interstate carriers in furtherance of that scheme; using interstate wires (including emails) in furtherance of that scheme; and then spending the proceeds of those offenses for her own personal use, often in amounts in excess of $10,000 of criminally derived proceeds. Therefore, I respectfully request that a criminal complaint and arrest warrant be issued to support the arrest of and to charge PETRONE-CODRINGTON with the TARGET OFFENSES.

Respectfully submitted,

**ANTHONY CRISERA**
Digitally signed by ANTHONY CRISERA
Date: 2021.09.02 14:58:46 -04'00'

Anthony Crisera
Special Agent
Federal Bureau of Investigation

The truth of the foregoing affidavit has been attested to me by Special Agent Anthony Crisera of the Federal Bureau of Investigation over the telephone on this  2nd  day of September, 2021, at New Haven, Connecticut.

**Sarah A. L. Merriam, U.S.M.J.**
Digitally signed by Sarah A. L. Merriam, U.S.M.J.
Date: 2021.09.02 16:31:42 -04'00'

HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE